## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CYNTHIA STEWART JENKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-1168 |
| | § | |
| PHH MORTGAGE CORPORATION dba | § | |
| PHH MORTGAGE SERVICES and | § | With Jury Demand Endorsed |
| NEWREZ LLC, | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Cynthia Stewart Jenkins ("Plaintiff"), by and through counsel, and for her Complaint against Defendants PHH Mortgage Corporation dba PHH Mortgage Services ("PHH") and NewRez LLC ("NewRez") (PHH and NewRez are collectively referred to as "Defendants"), states as follows:

### I. INTRODUCTION

1.     For over seven years, Defendants, as mortgage servicers and debt collectors, have engaged in willful, malicious, harassing, deceptive and fraudulent actions against Plaintiff, a consumer, in furtherance of their efforts and scheme to illegally collect on a non-recourse Texas home equity loan from Plaintiff personally.  At all relevant times, Defendants knew: 1) Plaintiff had previously vacated and surrendered the subject real property collateral; 2) Plaintiff was subject to the protection of the discharge injunction prohibiting any contact or collection activity by Defendants; and 3) Plaintiff and Defendants' predecessor servicer, Ocwen Loan Servicing, LLC ("Ocwen"), had settled a lawsuit where the same types of unlawful conduct had been alleged. Defendants, despite their knowledge of the foregoing, have contacted Plaintiff yet again trying to

collect the discharged mortgage debt. The foregoing actions are part of Defendants' illegal design, implemented by their policies and procedures, to harass and deceive consumers to pay the discharged debts by misrepresenting to them that they still owed such discharged debt or that they had an obligation to take actions to benefit Defendants financially to their detriment.

2.      Plaintiff claims Defendants violated: 1) the Texas Debt Collection Act, Texas Finance Code § 392.001 *et seq.* (the "TDCA"); 2) the common law prohibiting invasion of privacy; 3) the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692, *et seq.*; and 4) the discharge injunction issued by the of the United States Bankruptcy Court for the Southern District of Texas, Houston Division. Plaintiff seeks to recover actual, statutory, and punitive damages, and legal fees and expenses against Defendants.

## II. PARTIES

3.      Plaintiff is a natural person residing in Harris County, Texas and is a "consumer" as defined by the TDCA, Tex. Fin. Code § 392.001(1), and the FDCPA, 15 U.S.C. § 1692a(3).

4.      Defendant PHH is a foreign corporation that may be served by delivering citation to its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

5.      Defendant NewRez is a foreign limited liability company which may be served by delivering citation to its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

6.      Defendants are "creditors," "debt collectors," and/or "third-party debt collectors" under the TDCA, Tex. Fin. Code §§ 392.001(3), (6) and (7), and the FDCPA, 15 U.S.C. §§ 1692a(4) and (6).

7.      The debt at issue that Defendants have been attempting to collect from Plaintiff is a "consumer debt" and/or "debt" as defined by the TDCA, Tex. Fin. Code § 392.001(2), and the FDCPA, 15 U.S.C. § 1692a(5).

## III. Jurisdiction and Venue

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334 and 1367 and 15 U.S.C. §§ 1692, *et seq.*

9.      Venue in this district is proper because Defendants transact business in this district, Plaintiff resides in this district and filed her subject bankruptcy case in this district, and the conduct complained of occurred in this district.

## IV. Factual Allegations

### A.      History of the Note, a Non-Recourse Home Equity Loan.

10.     Prior to Plaintiff filing her subject Bankruptcy Case, Ocwen asserted a pre-petition claim against her in its attempt to collect a consumer debt she allegedly owed on the subject note. The debt required Plaintiff to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes.

11.     The subject debt stems from a Texas Home Equity Note (Fixed Rate – First Lien) which Plaintiff initially executed on or about July 11, 2006 (the "Note") in favor of Dallas Home Loans, Inc. ("Dallas Home Loans") in the amount of $108,000 and secured by real property located at 12854 Riva Ridge Lane, Houston, Texas 77071 (the "Property").

12.     On or about July 25, 2006, Dallas Home Loans purportedly assigned the Note to New Century Mortgage (the "First Assignment").

13.     On September 3, 2010, Defendant's Vice President, acting as Attorney in Fact for New Century Mortgage, signed an assignment of the Note to US Bank National Assn., as Trustee

for the C-Bass Mortgage Loan Asset-backed Certificates Series 2007-CB1 c/o Litton Loan Servicing, LLC ("Litton") (the "Second Assignment").

**B**.    **Plaintiff's Bankruptcy Case.**

14.    On July 2, 2010, Plaintiff filed for bankruptcy under Chapter 13 of the U.S. Bankruptcy Code in Case Number 10-35507 ("Bankruptcy Case") in the Southern District of Texas, Houston Division ("Bankruptcy Court").

    **1)    The Note was Listed as a Secured Claim in Plaintiff's Bankruptcy Case.**

15.    Plaintiff filed Schedules with her bankruptcy petition, listing her debts at the time of her bankruptcy filing, which included, in part, the outstanding amount on the Note, for which she represented as Litton's Account No. xxxx7178, later known as Defendants' Account No. xxxxxx9839, (collectively, the "Account" or "Note").   In "SCHEDULE D – CREDITORS HOLDING SECURED CLAIMS," Plaintiff listed secured claims on the Account for the balance and arrearages on the Note, identifying Litton as the creditor.

16.    At the time of filing her Bankruptcy Case, Plaintiff intended to retain the Property; however, this intention changed, and she surrendered and vacated the Property during her Bankruptcy Case.

17.    A true and correct copy of Plaintiff's Schedule D to Plaintiff's bankruptcy petition listing the subject claim on the Note is attached hereto as Exhibit "A."

    **2)    Litton Filed a Proof of Claim for the Note That Was Later Transferred to Ocwen in Plaintiff's Bankruptcy Case.**

17.    On November 9, 2010, Litton filed a fully secured Proof of Claim for the Account identified as Claim #10 in the amount of $112,822.91 (the "Claim").

18.    In September 2011, Ocwen acquired Litton and the servicing rights on the Note were also acquired by Ocwen.

19.     On October 13, 2011, Ocwen filed a Transfer of Claim for Security in the Bankruptcy Case, transferring the Claim from Litton to Ocwen.

20.     A true and correct copy of relevant portions of the Claims Register Summary showing the subject Claim history from Plaintiff's Bankruptcy Case is attached hereto as Exhibit "B."

**3)     Plaintiff Surrendered and Vacated the Real Property Collateral for the Note During her Bankruptcy Case.**

21.     In early 2012, Plaintiff began to have difficulties making the scheduled payments on the Note in her Chapter 13 Plan and realized she could no longer keep the Property; so, she surrendered it and moved from the Property.

22.     On April 10, 2012, Plaintiff filed a Motion to Modify Confirmed Plan and proposed an amended Chapter 13 Plan ("Amended Plan"), "Uniform Plan and Motion for Valuation of Collateral," in her Bankruptcy Case, specifically noting her surrender of the Property and that "**[n]o further payment will be made on this claim**" for the Note.

23.     On April 24, 2012, Plaintiff's Amended Plan was confirmed by the Bankruptcy Court and an "Order Confirming Chapter 13 Plan Modification and Valuing Collateral Pursuant to 11 U.S.C. § 506" ("Confirmation Order") was entered in the Bankruptcy Case.

24.     True and correct copies of the Amended Plan and Confirmation Order are attached hereto as Exhibits "C" and "D," respectively.

**4)     The Account was Discharged in Plaintiff's Bankruptcy Case and The Discharge Injunction Prohibited Defendants from Contacting Plaintiff or Taking Any *In Personam* Collection Action on the Discharged Debt.**

25.     On December 15, 2014, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order") (the said order followed Official Form B18, including the explanatory language contained therein) and the debt on the Note and other discharged debts were discharged as to Plaintiff's personal liability.

26.     Included with the Discharge Order was an explanation of the general injunction prohibiting those holding pre-petition claims from attempting to collect those claims.   The Discharge Order and its notice warned all creditors in conspicuous language that "***Collection of Discharged Debts Prohibited***" and that "a creditor is not permitted to contact a debtor by mail, phone, or otherwise…or take any other action to collect a discharged debt from the debtor."  It also states, "[a] creditor who violates this order can be required to pay damages and attorney's fees to the debtor."

27.     On or about December 17, 2014, the Bankruptcy Noticing Center sent a copy of the Discharge Order to Ocwen by electronic transmission and to Litton by first class mail, which constituted notice of the discharge being granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. §524(a).

28.     A true and correct redacted copy of the Discharge Order is attached hereto as Exhibit "E."

29.     At no time during the pendency of the Bankruptcy Case did Litton, Ocwen, or any other person or entity object to or dispute the details of the subject claim contained in Schedule D to Plaintiff's Petition filed in her Bankruptcy Case.

30.     At no time during the pendency of the Bankruptcy Case did Plaintiff reaffirm the debt on the Note with any person or entity.

31.     At no time during the pendency of Plaintiff's Bankruptcy Case was the subject Claim on the Note and debt on the Account declared to be non-dischargeable by the Bankruptcy Court.

**C.      Post-Discharge, Ocwen Continued Illegal, Harassing and Deceptive Collection Activities Against Plaintiff on the Note.**

32.     Following Plaintiff's bankruptcy discharge, Ocwen removed the Account from a bankruptcy hold in its servicing system(s) and placed the Account back in default servicing.

33.     On or about January 18, 2019, disputes arose between Plaintiff and Ocwen relating to alleged violations of the Fair Credit Reporting Act, the Texas Finance Code, Texas common laws related to fraud, invasion of privacy and negligent misrepresentation, the automatic stay of 11 U.S.C. § 362, and the discharge injunction of 11 U.S.C. § 524.  Those disputes are more fully set forth in the pleadings filed in the United States District Court for the Southern District of Texas, Houston Division, entitled *Cynthia Stewart Jenkins v. Ocwen Loan Servicing, LLC*, bearing Civil Action No. 4:19-cv-00190 (hereinafter to be referred to as the "First Lawsuit").

34.     On or about December 18, 2019, Plaintiff and PHH, as successor to Ocwen, resolved all outstanding issues between them by entering into a Compromise and Release Agreement and, as part of the settlement, the First Lawsuit was dismissed.

**D.     Despite the Bankruptcy Discharge and Settlement of the First Lawsuit, Defendants Continued Illegal, Harassing and Deceptive Collection Activity Against Plaintiff on the Note.**

35.     Beginning in April 2020, Defendants continued their campaign of harassment, deceptive collection activity, and illegal contact by continuing to send monthly statements and other correspondence even though the debt was discharged in 2014 and the First Lawsuit, complaining of these same issues, settled.

36.     For example, on or about April 16, 2020, Defendants sent Plaintiff a monthly mortgage statement, complete with a detachable payment coupon and return envelope, representing that there was a payment due by May 1, 2020 in the amount $52,222.03, which included a "Regular Monthly Payment" of $1,017.68, "Total New Fees and Charges" of a $26.01 late fee assessed, "Outstanding Unpaid Fees, Returned Item Charges and Shortages" of $208.08, "Assessed Expenses" of $6,384.59, and "Past Unpaid Amount" of $44,585.67.  The statement warns Plaintiff under the bolded heading "Important Information" that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that

purpose," and "you are hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."

37.     A true and correct redacted copy of the April 16, 2020 statement Defendants sent Plaintiff is attached hereto as Exhibit "F."

38.     On or about April 17, 2020, Defendants sent Plaintiff a letter requesting that she update insurance information for the Property or they would buy lender-placed insurance at a cost to Plaintiff of $1,793.00 annually, that may not provide as much coverage the previous policy, and that it "…is primarily for the benefit of PHH MORTGAGE SERVICES."  The letter warns Plaintiff under the bolded heading "FAIR DEBT COLLECTION PRACTICES ACT DISCLOSURE" that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose," and "you are hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."

39.     A true and correct redacted copy of the April 17, 2020 letter is attached hereto as Exhibit "G."

40.     On or about May 18, 2020, Defendants sent Plaintiff a monthly mortgage statement, complete with a detachable payment coupon and return envelope, representing that there was a payment due by June 1, 2020 in the amount $53,280.72, which included a "Regular Monthly Payment" of $1,017.68, "Total New Fees and Charges" of a $26.01 late fee assessed, "Outstanding Unpaid Fees, Returned Item Charges and Shortages" of $34.09, "Assessed Expenses" of $6,399.59, and "Past Unpaid Amount" of $45,603.35.  The statement warns Plaintiff under the bolded heading "Important Information" that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose," and "you are

hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."

41.      A true and correct redacted copy of the May 18, 2020 statement is attached hereto as Exhibit "H."

42.      On or about December 16, 2020, Defendants sent Plaintiff a monthly mortgage statement, complete with a detachable payment coupon and return envelope, representing that there was a payment due by January 1, 2021 in the amount $65,117.02, which included a "Regular Monthly Payment" of $1,044.07, "Total New Fees and Charges" of a $26.01 late fee assessed, "Outstanding Unpaid Fees, Returned Item Charges and Shortages" of $416.16, "Assessed Expenses" of $10,850.89, and "Past Unpaid Amount" of $52,779.89.   The statement warns Plaintiff under the bolded heading "Important Information" that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose," and "you are hereby notified that a negative credit report reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."

43.      A true and correct redacted copy of the December 16, 2020 statement is attached hereto as Exhibit "I."

44.      On or about March 16, 2021, Defendants sent Plaintiff a monthly mortgage statement, complete with a detachable payment coupon and return envelope, representing that there was a payment due by April 1, 2021 in the amount $70,505.26, which included a "Regular Monthly Payment" of $1,044.07, "Outstanding Unpaid Fees, Returned Item Charges and Shortages" of $494.19, "Assessed Expenses" of $13,054.90, and "Past Unpaid Amount" of $55,912.10.  The statement warns Plaintiff under the bolded heading "Important Information" that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose," and "you are hereby notified that a negative credit report

reflecting on an account holder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled."

45.     A true and correct redacted copy of the March16, 2021 statement is attached hereto as Exhibit "J."

46.     Beginning in April 2020, Defendants continued to send monthly statements each month including the latest one on March 16, 2021 for a total of 12 monthly statements with no end in sight.

## V.  GROUNDS FOR RELIEF – COUNT I

### TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

47.     Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs as if fully rewritten here.

48.     Defendants have violated the Texas Finance Code in numerous ways including, but not limited to the following:

a)     Tex. Fin. Code § 392.301(a)(8), which prohibits Defendants from using threats, coercion, or attempts to coerce, to threaten, or to take an action prohibited by law.  Since Defendants' attempts to collect the debt on the Account post-discharge constituted a violation of the bankruptcy discharge injunction in place and the common law for invasion of privacy, they have violated this statute;

b)     Tex. Fin. Code § 392.303(2) prohibits Defendants from collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer.  Inasmuch as Defendants were attempting to charge fees and other charges, they violated this section of the TDCA;

c)     Tex. Fin. Code § 392.304(a)(8) prohibits misrepresenting the character, extent, or amount of Plaintiff's debt. Defendants misrepresented to Plaintiff, through statements and letters representing that there were periodic payments due and owing by a specific date, with fees accruing and that the Account, which had been discharged, was past due and owing were to deceive Plaintiff into paying the discharged debt.  These were misrepresentations of

the character, extent or amount of the subject debt, in violation of the TDCA;

d)     Tex. Fin. Code § 392.304(a)(12), which prohibits, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation, representing that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges. To the extent Defendants represented to Plaintiff that she was responsible for post-discharge fees and charges related to the Account, Defendants violated this section of the TDCA;

e)     Tex. Fin. Code § 392.304(a)(13) prohibits representing that a consumer debt will definitely be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if the award of the fees or charges is subject to judicial discretion, as here the post-discharge billing statements, notices and letters at issue represent that Plaintiff owed Defendants for "late fees" and other post-discharge assessed charges to the Account that were continuing to accrue every month post-discharge. Since 11 U.S.C. § 524 prohibits Defendants from attempting to collect on the discharged debt on the Account, as Plaintiff was no longer personally liable for it upon discharge and for the same reasons stated in the preceding paragraphs, Defendants violated this section of the TDCA; and

f)     Tex. Fin. Code § 392.304(a)(19), which prohibits Defendants' use of false representations or deceptive means to collect a debt, for the same reasons as stated in the preceding paragraphs (a - e), Defendants used false representations and deceptive means to collect the debt on the Note, a discharged, non-recourse loan.

49.     Under Tex. Fin. Code Ann. § 392.403, the Defendants' violations of the TDCA, as stated above in the preceding paragraphs render Defendants liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees. Plaintiff's injuries resulted from Defendants' gross negligence, malice, and/or actual fraud, which entitles Plaintiff to punitive damages.

50.     Due to Defendants' conduct, Plaintiff was forced to hire counsel and her damages include reasonable attorney's fees incurred in prosecuting this claim.

## VI.  GROUNDS FOR RELIEF - COUNT II

### INVASION OF PRIVACY

51.    Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs as if fully rewritten here.

52.    Defendants' conduct, as described hereinabove, when they made harassing and illegal contacts with Plaintiff through their post-discharge written correspondences at issue to Plaintiff, constituted invasions of Plaintiff's private affairs.  These invasions were ones that would be highly offensive to a reasonable person because Defendants were forbidden by law to contact Plaintiff post-discharge regarding the subject debt and in light of settling the First Lawsuit with similar claims, Plaintiff had a reasonable basis to believe she would not be contacted by Defendants for deceptive, fraudulent, harassing and illegal reasons, as she was.

53.    Defendants' wrongful acts at issue caused injury to Plaintiff which resulted in or exacerbated her mental anguish and emotional distress to a level that caused or exacerbated her physical harm, array of negative emotions, loss of time, and economic damages.

54.    Plaintiff's injuries resulted from Defendants' malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VII.  GROUNDS FOR RELIEF - COUNT III

### FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

18.    Plaintiff realleges and incorporates herein all of the above paragraphs as if set forth herein in their entirety.

19.    The FDCPA is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties.  *See* 15 U.S.C. § 1692, *et seq*.  The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights.  *See*

15 U.S.C. § 1692k.  The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

20.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose and forbids debt collectors from taking such action.  The substantive heart of the FDCPA lies in three broad prohibitions.  First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  Third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

21.     In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, the loss of jobs, and to invasions of individual privacy."  15 U.S.C. § 1692(a).  Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers.  *See* 15 U.S.C. § 1692b.

22.     Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors.  The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

23.     The FDCPA is a strict liability statute, which provides for actual and statutory damages upon the showing of a single violation. *See Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-3, (2d Cir. 1993); *see also Taylor v. Perrin, Landry, DeLaunay & Durand*, 103 F.3d 1232 (5th Cir. 1997).  "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *see also Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

24.     The FDCPA is a remedial statute and therefore must be construed liberally in favor of the debtor. *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 1235 (W.D. Wash. 2006).  The remedial nature of the FDCPA requires that courts interpret it liberally. *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006).  "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. §1601 *et seq.*, is a remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

25.     The FDCPA is to be interpreted in accordance with the "least sophisticated consumer" standard. *See Brown v. Card Serv. Ctr*, 464 F.3d 450, 453 fn1 (3d Cir. 2006); *Graziano v. Harrison*, 950 F.2d 107, 111 fn5 (3rd Cir. 1991).  The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Id*.  The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naïve and trusting, against deceptive collection practices,

and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices.  *See Clomon*, 988 F.2d at 1318.

26.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representations or means in connection with the collection of any debt and sets forth a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct.  *See* 15 U.S.C. § 1692 e(1)-(16).

27.     All of Defendant NewRez's post-discharge actions at issue, described hereinabove in the above paragraphs are the manifestation of its practices and policies to ignore the provisions of the Bankruptcy Code applicable to it and illegally collect or attempt to collect debts that have been discharged in bankruptcy *in personam* from unsophisticated debtors.  Moreover, for the same reasons stated in the preceding paragraphs, Defendant NewRez's actions were deceitful, misleading, harassing, and unconscionable, all by design and taken intentionally against Plaintiff, in violation of the FDCPA.

## VIII. GROUNDS FOR RELIEF – COUNT IV

### VIOLATIONS OF THE BANKRUPTCY DISCHARGE INJUNCTION

55.     Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs as if fully rewritten here.

56.     At all times material to this proceeding, Defendants had actual knowledge about Plaintiff's Bankruptcy Case and the discharge of the debt at issue.  The post-discharge actions of Defendants at issue were willful and harassing acts and constitute efforts to collect the debt on the Note from Plaintiff in violation of the discharge injunction of 11 U.S.C. § 524(a).

57.     Defendants' written contacts with Plaintiff post-discharge seeking payment of the Note were illegal collection attempts and part of Defendants' orchestrated design to harass, deceive

and lure Plaintiff to pay Defendants on the Note in violation of the discharge injunction, when *in personam* collection on the Note was forbidden.

58.     After Plaintiff received her bankruptcy discharge and settled the First Lawsuit, Defendants continued their orchestrated harassment of Plaintiff in furtherance of their *in personam* collection against her on the Note.

59.     The actions of Defendants at issue constitute a violation of the discharge injunction as set forth in 11 U.S.C. § 524(a)(1)-(3).  The collective actions of Defendants at issue constitute harassment and coercive actions taken to collect on the subject discharged debt from Plaintiff and were gross violations of the discharge injunction as set forth in 11 U.S.C. § 524(a)(1)-(3).

60.     Defendants' failure to comply with the aforesaid laws, in light of being on notice of Plaintiff's Bankruptcy Case and discharge, surrender of the collateral Property, and the effect of the discharge as to the subject debt on the Account, illustrates their contempt for federal law and the discharge injunction.

61.     The facts and background stated above demonstrate that Defendants willfully violated the orders and injunctions of the Bankruptcy Court as they concern the Bankruptcy Case filed by Plaintiff.  With this *prima facie* showing, the duty is on Defendants to show, as their only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability.  Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendants, Plaintiff must prevail on her claims, and Defendants must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the bankruptcy filed by Plaintiff.  Any defense put forth by Defendants in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made to justify the conduct and actions of Defendants.  Any allegation of a good faith exception should not be allowed.

62. Defendants violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived; …"

63. No exceptions exist under 11 U.S.C. § 524 or the other provisions of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendants at issue with regard to the discharge injunction, as stated above.

64. The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint. None of the aforementioned has been approved by the Court here, and no waiver of the orders or injunctions of the Court has occurred in Plaintiff's Bankruptcy Case as pertaining to the rights and remedies of Defendants.

65. Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court. Any attempt to burden Plaintiff with policing the misconduct of Defendants would be a complete derogation of the law. It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance. Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any defense put forth by Defendants in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendants. No allegation of a mitigation as a defense should be allowed.

66. Plaintiff has been injured and damaged by Defendants' post-discharge harassment and actions at issue and is entitled to recover judgment against Defendants for actual damages and

punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. § 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

## IX. *Respondeat Superior* and Vicarious Liability

67.     After a reasonable time to conduct discovery in this case, Plaintiff believes she will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of any type for Defendants in the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability on Defendants for all actions at issue under a theory of *respondeat superior* and/or vicarious liability.  For example, PHH was acting independently and as an agent or representative of NewRez.

## X. Damages

68.     In addition to any damages previously stated hereinabove, the conduct of Defendants at issue has proximately caused Plaintiff past and future monetary loss, in part, with regard to actions she had to take investigating her claims at bar and expenses related thereto and in bringing this lawsuit, the second one needed to force Defendants to comply with the discharge injunction.  Defendants' actions also caused Plaintiff additional mental distress, emotional anguish, insomnia, nausea, headaches, and a discernable injury to her emotional state and other damages, evidence for which will be presented to the jury.  Plaintiff's level of emotional distress and mental anguish and harm increased with each post-bankruptcy contact she received from Defendants.

69.     Defendants' years of harassment of Plaintiff have caused and/or exacerbated a negative array of emotions, mental anguish and distress.  Moreover, dealing with the consequences of Defendants' actions has cost Plaintiff her time and mental energy, which are precious to her. Specifically, Plaintiff suffered extreme stress, panic attacks, debilitating fear, major anxiety,

depression, chest pains, headaches, insomnia, and exhaustion as a result of the conduct of Defendants.

70.     The actions of Defendants at issue brought back negative emotions and anguish of having to file and go through bankruptcy and the First Lawsuit and caused Plaintiff new fears, stress and mental anguish.  A feeling of extreme worry, fear and anxiety overtook Plaintiff and increased with her receipt of each contact from Defendants at issue

71.     After a reasonable time to conduct discovery, Plaintiff believes she will be able to show that all actions taken by Defendants at issue were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, and with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the law.

72.     After a reasonable time to conduct discovery, Plaintiff believes she will be able to show that all actions taken by Defendants at issue were taken in accordance with Defendants' policies, procedures and illegal design to profit financially from unsophisticated debtors by harassing them and collecting debts included and discharged in their respective bankruptcy cases.

73.     At all relevant times, Defendants knew, and continue to know, that a Texas home equity loan is non-recourse and a debt discharged in bankruptcy means the debt is not legally collectible, but Defendants have made a corporate decision to willfully and maliciously act contrary to their knowledge in their calculated decisions to violate Plaintiff's legal rights.

74.     After a reasonable time for discovery, Plaintiff believes she will be able to show that despite Defendants receiving dozens, if not hundreds, of disputes complaining about the types of actions at issue, Defendants intentionally and knowingly have not corrected their policies of engaging in these actions.

75.     After a reasonable time for discovery, Plaintiff believes she will be able to show that Defendants have engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with their policies and procedures, with respect to willfully, intentionally, and maliciously attempting to collect on debts included in and discharged in bankruptcy, through purported modifications of discharged debt, failing to post and credit post-discharge payments to accounts modified post-discharge, making fraudulent and deceptive material misrepresentations to discharged debtors about modifications or the status of discharged accounts and debt, or through other collection activities.  Accordingly, Defendants are subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendants and similar companies.  Moreover, Plaintiff's injuries resulted from Defendants' malice and/or actual fraud, which entitles Plaintiff to punitive damages.

76.     Due to Defendants' conduct, Plaintiff was forced to hire counsel and her damages include reasonable attorney's fees incurred in prosecuting her claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Cynthia Stewart Jenkins prays the Court:

A.     Enter judgment in favor of Plaintiff and against Defendants for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for violations of the TDCA, Plaintiff's privacy rights, and the discharge injunction, and against NewRez for violations of the FDCPA;

B.     Find that appropriate circumstances exist for an award of punitive damages to Plaintiff,

C.     Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.     Grant such other and further relief, in law or equity, to which Plaintiff might show she is justly entitled.

Respectfully submitted,

/s/ James J. Manchee
James J. Manchee
Attorney-in-Charge
Texas Bar No. 00796988
Southern Dist. of Texas Bar No. 2524180
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Suite 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFF

JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

April 9, 2021
Date

/s/ James J. Manchee
James J. Manchee